UNITED STATES OF AMERICA

Criminal No. 12-479   BY

Vs.

GARNETT GILBERT SMITH

     Movant

_____/

## MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO 18 U.S.C. §3582(c) AND SECTION 603(B) OF THE *FIRST STEP ACT*

COMES NOW, Movant Garnett Smith, *Pro Se*, and pursuant to §18 U.S.C. 3582(c)(1)(A)(i) and Section 603(B) of the *First Step Act* of 2018, moves this Court for an Order reducing Mr. Smith's sentence to 170 months or time served, based upon (1) rehabilitation; (2) disparity in sentencing; (3) change in law; (4) youth at the time of the offense; (5) sentence length; and (6) amount of time served.

**Name:**     Garnett Smith

**Prisoner No.**  54853-037

**Place of Confinement:**

     FCI Three Rivers
     P.O. Box 4200
     Three Rivers, TX 78071

1.    **Name of Court that entered judgment**: United States District Court for the District of Maryland

2.    **Case Number**: 12-479

3.    **Date of Judgment**: The judgment was entered on January 30, 2014 (Doc. 105)

4.     **Date of Sentencing**: January 30, 2014 (Doc. 105)

5.     **Length of Sentence**: 300 months (Doc. 105 at 2)

6.     **Plea entered**: Guilty

7.     **Trial**: No

8.     **Nature of Offense**:

Count 1:     Conspiracy to Distribute and Possession With the Intent to Distribute Cocaine, 21 U.S.C. §846

9.     **Indictment**: Mr. Smith pled guilty before the Honorable William D. Quarles, Jr., on October 10, 2013, and was found guilty of Count 1. (Doc. 92).

10.    **Sentencing**: Mr. Smith was sentenced on January 30, 2014, to 300 months imprisonment on Count 1, to be followed by 5-years supervised release. Doc. 105.

11.    **Direct Appeal**: A timely notice of appeal was taken. (Doc. 107). On September 25, 2014, the Fourth Circuit Court of Appeals, *affirmed* Mr. Smith's conviction. *United States v. Smith*, 583 Fed. Appx. 230 (4th Cir. 2014). Doc. 145.

12.    **Petition for Writ of Certiorari to the U.S. Supreme Court**: No petition was filed.

13.    **The Court Has Jurisdiction to Consider an Otherwise Final Judgment under the First Step Act.**

Section 603(b) of the *First Step Act* amends § 3582(c)(l)(A) by giving district courts jurisdiction to modify a judgment for compassionate release "upon motion of the defendant" after the defendant "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30

days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first. *United States v. Rodd*, No. 13-230 ADM, 2019 U.S. Dist. LEXIS 189068, at *4 (D. Minn. Oct. 31, 2019); *United States v. White*, No. ELH-19-034, 2020 U.S. Dist. LEXIS 202334, at *4 (D. Md. Oct. 30, 2020).

The defendant bears the burden of demonstrating exhaustion of remedies as required by the *Act. See United States v. Blaylock*, No. 1:12-cr-10010-001, 2020 U.S. Dist. LEXIS 95002, at *3 (W.D. Ark. June 1, 2020); *United States v. Chandler*, No. 3:15-mj-122 (DJN), 2020 U.S. Dist. LEXIS 194352, at *7 (E.D. Va. Oct. 19, 2020). Mr. Smith can make this showing.

14.    On January 4, 2023, Mr. Smith submitted a notice and request to the Warden of his institution requesting Compassionate Release, alleging change in law, rehabilitation, youth at the time of the offense, sentence length, amount of time served, and disparity in sentencing. *(Exhibit* 1). To date, the warden has not responded. Thus, Mr. Smith has exhausted his administrative remedies since this motion is brought more than 30 days after submission to the warden, giving this court jurisdiction under 18 U.S.C. §3582(c)(1)(A) to reduce his sentence. *Muhammad v. United States*, 16 F.4th 126, 129 (4th Cir. 2021) ("The text of §3582(c)(1)(A) plainly provides that a defendant may file a motion on his own behalf 30 days after the warden receives his request, regardless of whether the defendant exhausted his administrative remedies"); *United States v. Ferguson*, 2022 U.S. App. LEXIS 32841 (4th Cir. 2022) (holding that §3582(c) does not require issue exhaustion).

15. **Mr. Smith's Conviction and Sentence**

Beginning in 2010 and continuing through October of 2011, co-defendants Marc Tyrone Collins and Michael Lee White supplied Mr. Smith with kilogram quantities of cocaine. The codefendants obtained the cocaine from sources in California and transported the cocaine by car carriers to the Mr. Smith in Baltimore. The cocaine was often hidden in concealed compartments within vehicles loaded on the car carriers. Mr. Smith would pay for the shipments of cocaine by placing money on the car carriers as they traveled back to the co-defendants in California.

16. The shipments of cocaine were typically in quantities of 60 to 80 kilograms each. Between early 2010 and October 2011, approximately eighteen shipments of cocaine was sent from the co-defendants to Mr. Smith in Baltimore, totaling over 1,000 kilograms.

17. In October 2011, Arkansas State Troopers intercepted a car carrier loaded with $2,306,745 in U.S. currency. The money was sent by Mr. Smith and was to be delivered to the co-defendants in California. The money was from the proceeds of cocaine sales in Baltimore and sent as payment to the co-defendants.

18. On February 27, 2013, the Grand Jury in the District of Maryland, returned a two count superseding indictment against Mr. Smith, charging him with conspiracy to distribute and possession with intent to distribute cocaine, in violation of 21 U.S.C. §846 and possession with intent to distribute heroin, in violation of 21 U.S.C. § 841. On October 10, 2013, Mr. Smith pled guilty to Count One, conspiracy to distribute and possession with intent to distribute cocaine. On January 30, 2014, the

district court imposed a sentence of 300 months imprisonment pursuant to a Rule 11(c)(1)(C) plea agreement. The judgment also contained a provision for criminal forfeiture of the narcotics proceeds.

19. **Mr. Smith is Eligible for Re-sentencing Pursuant to the First Step Act**

Section 3582(c)(1)(A), as amended by the First Step Act of 2018, vests this Court with the authority to reduce a sentence if: (i) the defendant presents "extraordinary and compelling reasons" warranting a sentence reduction; (ii) a reduction would be consistent with "applicable policy statements" issued by the Sentencing Commission; and (iii) the § 3553(a) sentencing factors merit a reduction. As the Fourth Circuit observed, however, there is currently no "applicable" policy statement governing § 3582(c)(1)(A) motions filed by defendants. *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020) (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)).

20. Pursuant to *McCoy*, in the absence of an "applicable" policy statement governing motions filed by defendants, "district courts are 'empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'" *Id.* (emphasis in original); *see also United States v. Long*, 2021 WL 1972245 (D.C. Cir. 2021); *United States v. Robertson*, 2022 U.S. Dist. LEXIS 19336, at *8 (S.D. Iowa Feb. 1, 2022); *United States v. Shkambi*, 993 F.3d 388 (5th Cir. 2021); *United States v. Aruda*, 993 F.3d 797 (9th Cir. 2021); *United States v. McGee*, 992 F.3d 1035 (10th Cir. 2021); *United States v. Jones*, 980 F.3d 1098 (6th Cir. 2020).

21. The Fourth Circuit recently reiterated that because the Sentencing Commission "has not updated [U.S.S.G. § 1B1.13] to account for the fact that the *Act* now allows

defendants to file their own motions for compassionate release," courts are not bound by the standard established therein. *United States v. Kibble*, 992 F.3d 326, 331 (4th Cir. 2021) (citation omitted).

22.  Essentially, after *McCoy*, the compassionate release inquiry is a two-step process—first, are there extraordinary and compelling reasons for relief, and, second, is the inmate deserving of relief after evaluating the § 3553(a) sentencing factors. *See also Conception v. United States*, 142 S. Ct. 2389 (2022) (*First Step Act* relief may be granted based on intervening **changes of fact and law).**

23.  **Mr. Smith's Conviction And Guidelines Applications**

Mr. Smith pled guilty to conspiracy to possess and distribute cocaine, in violation of 21 U.S.C. §846 and §841, respectively. Mr. Smith was subject to a mandatory minimum sentence of 10-years based on the crime. The base offense level in this case was 38, per USSG §2D1.1, and after being combined with other guideline applications, the final offense level was 39, criminal history category III (324-405 months). *See* Doc. 226 at 1.

24.  **The Court Should Exercise its Discretion under Section 603(B) to Reduce Mr. Smith's Sentence.**

A.  **Rehabilitation**

A reduced sentence is warranted in this case because Mr. Smith has made productive use of his time while in custody. *See Pepper v. United States*, 562 U.S. 476, 492-93 (2011) (explaining that, where a case is before the district court for re-sentencing, the court should consider evidence of the defendant's post-offense rehabilitation). Since his arrest and confinement, Mr. Smith has taken the necessary steps to improve his

life, conduct, and purpose. Mr. Smith is rife with contrition and is sincerely remorse for his poor judgment and impetuous conduct.

25. To his credit, Mr. Smith has completed many treatment and self-help programs, and has come a long way in becoming a productive and valuable member of society. Mr. Smith's many accomplishments include a plethora of programs, including Commercial Drivers License; Typing; Parenting; Step Awareness; Ceramics; Astronomy; Career Exploration; Physical Science in Action; Money Smart – Bank On It; Money Smart – Borrowing Basics; Money Smart – Check It Out; Money Matters; Pay Yourself First; Keep It Safe; To Your Credit; Charge It Right; Loan To Own; Your Own Home; Geometry; Electronics Theory; ACE Entrepreneur 101; Intro To Mythology; Advanced Physics Theory; Problem Solving; Interview Techniques; Exploring Construction Trades; Dress and Groom for Career Success; Meeting Your Basic Needs; A Great Resume; How To Be A Father; Reconnecting With Family; Making Healthy Choices; Succeeding On The Job; For The Child; Industrial safety And Health; ACE TPC Rest Room Care; Spiritual Development; Home Construction Skills; ACE Ocean Realms; Understanding Restaurant Management; Classic Movie Reviews; Mens Health Leisure Class; ACE Inspiring Themes; Understanding Restaurant Management; FMC Tax Information Seminar; Anatomy Wellness Class; History of Vietnam War; America's National Parks; History Of the United States; ACE Wonders of the World; Physics III; The Road to Reentry; World History; National Geographic: Nightmare at Jamestown; Green Jobs; Home Construction and Repair; Road to Reentry: Meeting Basic Needs; Road to

Reentry: Succeeding on the Job; Road to Reentry: Making Healthy Choices; Studying Oceans; Mythology; Restaurant Impossible; Drivers License Language; Credit Card Language; Medical Language; Know Your Consumer Rights; and Infectious Disease Prevention, to name but a few. *See* (*Exhibit* 2 at p.2) and (*Exhibit* 2-1) *Cf. Hall v. United States*, No. 2:93-cr-162(1), 2020 U.S. Dist. LEXIS 121742, at *20 (E.D. Vir. Mar. 2, 2020) (observing that defendant was a violent drug dealer in 1994, but "based on the re-evaluation of the §3553(a) factors, evidence of Mr. Hall's post-rehabilitation, and the purpose of the First Step Act," the Court exercised its discretion to grant relief).

26. Mr. Smith has maintained steady employment while incarcerated, and he always "ensures [that] other inmates are completing their cleaning details," as noted by his Case Manager. (*Exhibit* 2 p.2). Not a day goes by that Mr. Smith is not studying ways in which to become a successful entrepreneur, a better man, and more productive member of society. Mr. Smith has done much, in his over 10-years of incarceration, to change his life, which continues on a daily basis, and his time in prison has helped him forge the necessary tools to succeed. Indeed, since 2014, Mr. Smith has worked tireless to seek self-help assistance in order to provide him with a multitude of options for success.

Mr. Smith's character, indeed, is noted by institutional staff, praising him for being "well mannered and respectful," that he is "quick to give a helping hand to his fellow inmates and staff," and that he is a "dedicated hard worker." (*Exhibit* 2 p.4). What is more, Mr. Smith, on his own, "holds a small class in the housing unit to help the spanish-speaking inmates learn English." *Id.* at 3.

27.     We do note, to be sure, that during his more than 10-years of incarceration, Mr. Smith has incurred two institutional infractions. *See* (*Exhibit* 2 p.3). Mr. Smith has accepted responsibility for those incidents, and notably they were committed early in his incarceration during the difficult transition to prison life, and each for in an attempt to defend himself, in which he was in no way the aggressor.

Still, Mr. Smith's adjustment is not even close to others who were granted relief despite incurring more serious and deplorable conduct. *Cf. United States v. Davis*, 2021 U.S. Dist. LEXIS 103081, at *6 (W.D.N.C. June 2, 2021) (granting relief under the *First Step Act* despite defendant having previously incurred **18 institutional infractions**, "including **six citations** for assaulting without serious injury, three citations for fighting, and a citation for possessing a dangerous weapon," where defendant had maintained near clear conduct since those infractions and had completed several educational programs); *United States v. Rosso*, 2021 U.S. Dist. LEXIS 74288, at *3 (W.D. Ark. April 12, 2021) (granting relief under *First Step* Act because of programming and maintaining some clear conduct, despite previously incurring **20 institutional infractions**, including infractions for "drugs and alcohol," as well as fighting, and possessing a "dangerous weapon"); *United States v. James Rogers*, Case No. RDB-92-0154 (D. Md. Oct. 7, 2021) (Doc. 533 at 7-8) (granting *First Step Act* relief and reducing defendant's life sentence although defendant had incurred **26 incident reports**, one involving the stabbing of another inmate, because some of those instances were "remote intime" and the defendant had made substantial efforts

at rehabilitation over the decades, including "educational and community programming").

28.    Mr. Smith does not mean to suggest that his institutional adjustment is commonplace. Indeed, we only ask that the totality of circumstances are considered when weighing the significance of past institutional error. *See United States v. Salina-Cortez*, 660 F.3d 695, 698 (3d Cir. 2011) ("It is only by ensuring that the individual circumstances of the defendant are not obliterated by the offense that an individual's potential to successfully rejoin society is maximized and the interests of the public safety advanced").

29.    Aside from that, Mr. Smith's accomplishments and rehabilitative efforts were all undertaken on his own account, despite his not having any chance of receiving a lesser sentence than **25-years**. Recently, the Supreme Court said that individuals who seek rehabilitative efforts with essentially nothing to gain should be given weighty consideration. *See Gall v. United States*, 552 U.S. 38, 59 (2007) (holding that it is appropriate to give "great weight" to a defendant's "self-motivated rehabilitation," which "lends strong support to the conclusion" that the defendant may not need correction to deter future crimes); *accord Snipes v. United States*, 2015 U.S. Dist. LEXIS 63056 (E.D. Tenn. 2015) (citing *Pepper* and acknowledging that defendant's rehabilitative efforts were demonstrated by his exemplary conduct while in prison "even while facing a life term of confinement"); *United States v. Mansoori*, 426 F. Supp. 3d 511, 519 (N.D. Ill. 2019) (granting relief under the *First Step Act* and noting that

"[w]ithout any expectation that he would be freed from custody, Mansoori consistently took efforts to better himself and remain productive").

30. To be sure, Mr. Smith is not a perfect man, and he has not always made sound decisions in his life. But after this stint of incarceration, it has become perfectly clear to him that a life of crime is not the path for him. And he is sure that he does not need to spend the remainder of his life in prison to get this right. *See Pepper*, 562 U.S. at 491 ('In assessing ... deterrence, protection of the public and rehabilitation ... there would seem to be no better evidence than a defendant's post-incarceration conduct"). Mr. Smith deserves another chance to live freely among his family and friends, and to be a productive member of society. The Court should exercise its discretion and reduce Mr. Smith's sentence.

**B.    Disparity in Sentencing, Sentence Length and Amount of Time Served**

31. Under the *First Step Act*, courts can consider disparity in sentencing as a basis for relief. One of the major requirements of §3553(a) is to examine the history and "characteristics" of the defendant, *United States v. Clay*, 787 F.3d 328, 330-31 (5th Cir. 2015), as well as the need to *avoid unwarranted sentencing disparity*, *United States v. Allen*, 2019 U.S. Dist. LEXIS 70739 (D. Conn. Apr. 26, 2019) ("Any potential disparity can be considered in deciding whether to grant a sentence reduction under the *First Step Act*"); *United States v. Haynes*, 2021 U.S. Dist. LEXIS 21964 (C.D. Ill. Feb. 5, 2021) ("[C]ourts may consider individual defendants' circumstances and weigh whether a particular sentencing disparity is truly 'extraordinary and compelling' on a case-by-case basis").

32. Here, Mr. Smith received a 25-year sentence for drugs, only. Doc. 105. Mr. Smith's case represents the atypical one wherein there are no allegations of guns or violence. A 25-year sentence for an offense like the one Mr. Smith committed is almost unheard of today, and, in fact, may be illegal. The draconian sentence he is serving not only exceeds today's generally imposed penalty, but it is longer than sentences imposed today for the most serious and heinous crimes, including murder.

33. While Mr. Smith's crime was not doubt a serious offense, it pales in comparison to other heinous offenses, such as murder, in which courts have routinely held that a sentence of roughly 21 years in an appropriate sentence. For example, in *United States v. Haynes*, 2021 U.S. Dist. LEXIS 21964 (C.D. Ill. Feb. 4, 2021), a closely analogous case, the court reduced a defendant's 105-year sentence based on the "massive disparity" created by the *First Step Act*, in part because "the national average for murder" is approximately "21 years," and noting that while the defendant's "multiple armed robbery crimes were undeniably serious," the court had doubts that any reasonable person would suggest they are deserving of a sentence 5 times the length of the national average sentence for murder. *Id.* at 17-18.

The court went on to explain that the defendant's case "is one illustrating how severe sentencing mandates can create outcomes wholly divorced from our notions of justice." *Id* at 18. Indeed, Mr. Smith is serving quarter of a century in prison a non-violent drug offense.

34. Such sentencing disparities were also highlighted in other recent cases, such as *United States v. Stockton*, 2021 WL 1060347, at *14 (D. Md. Mar. 17, 2021). There, Judge

Hollander found a recent case to be instructive, *United States v. Antoine*, NO. PWG-19-0140 (D. Md. Jul. 8, 2020), in which "the defendant was involved in a drug trafficking organization in Baltimore and confessed to the intentional shooting and killing of an individual in relation to the drug conspiracy." *Stockton*, 2021 WL 1060347, at *1. Judge Hollander observed that, in *Antoine*, although "the defendant was the shooter[,] . . . the government ha[d] agreed to a term of imprisonment ranging between 20 and 25 years." *Id.* Judge Hollander found the imprisonment range of 20 and 25 years in the plea agreement "a good indicator of the government's perspective" on what is an appropriate sentence for such a crime today. *Id.* at *14 n.10. As such, Judge Hollander granted compassionate release on this ground. *See also United States v. McRae*, No. PJM 10-0127, 2020 WL 3791983, at *10-11 (D. Md. July 7, 2020); *United States v. Wise*, No. ELH-18-72, 2020 WL 2614816, at *9 (D. Md. May 20, 2020).

35.    And, while no two cases are identical, courts have satisfied themselves that reasonably comparable underlying conduct that is punished differently serves as a basis to grant relief. Specifically, Judges Blake, Bredar, and Hollander, have reduced the life sentences for eight defendants who were sentenced pursuant to the §2A1.1 cross-reference for murder and later moved for sentence reductions.

36.    For example, a few months ago, Judge Hollander issued an opinion *affirming* the proposition that the disparity between Mr. Smith's sentence and recently imposed sentences for defendants with more serious offense conduct constitutes an *extraordinary and compelling* reason for relief. *See United States v. Babb*, No. ELH-04-

0190, ECF No. 275 (D. Md. June 4, 2021). In *Babb*, Judge Hollander reduced the life sentence for Walter Babb, who was charged with a number of drug and firearms offenses based on his involvement in a "drug trafficking organization that distributed large quantities of powder cocaine and cocaine base in Maryland," including two counts of use of a firearm to commit murder in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(j). *United States v. Babb*, No. ELH-04-0190, ECF No. 275 (D. Md. June 7, 2021). The § 924(j) counts related to the shooting deaths of two victims, whose bodies were discovered in the trunk of a car driven by Mr. Babb's co-defendant. "Each body was wrapped in bedding, plastic bags, and a shower curtain liner," and "[t]he items were determined to have come from Babb's residence in North Carolina." *Id.* at 4.

37. Mr. Babb was convicted at trial of all counts except for the two § 924(j) counts associated with the victims' deaths. Nevertheless, at sentencing, the Court found that, "at a minimum, Mr. Babb was an aider and abettor to the actual murder[s]" and, thus, calculated his guidelines under § 2A1.1. Based on a final offense level of 43 and a criminal history category VI (Mr. Babb qualified as a career offender, but had 23 criminal history points, triggering a criminal history category VI even without the career-offender enhancement), Mr. Babb faced a guidelines range of life.

38. The Court sentenced Mr. Babb to life imprisonment plus five years. Judge Hollander, considering the extremely serious nature of the offense conduct and Mr. Babb's "extensive criminal history, including multiple crimes involving violence," nevertheless determined that "a reduction in the sentence is amply warranted." *Id.* at

33, 38. Balancing the offense conduct and his prior record with his disciplinary and programming records, the Court determined that a sentence of 30 years was appropriate and would bring Mr. Babb's sentence in line with sentences imposed in similar cases today.

39. In another case, Judge Blake reduced to time served the life sentence of David Gray, who in 1996 was found guilty of murder in aid of racketeering and possession of a firearm in furtherance of a crime of violence. *United States v. Gray*, No. CCB-95-0364, ECF No. 201 (D. Md. May 10, 2021). Describing Mr. Gray's offense as "chilling," the Court explained that he, "at the behest of a drug dealer and with the prospect of some significant financial gain, planned and committed what amounted to the execution of Jamie Lee Waller." *Id.* at 6. Mr. Gray, together with two other individuals, located and "ambushed" Waller and two other men. *Id.* at 2. At least 29 shots were fired at the three victims; "Waller was killed in the gunfire, and the two men with him were seriously injured." *Id.*

40. At the time of the Court's decision, Mr. Gray had served more than 26 years in prison. In reducing Mr. Gray's sentence to time served, Judge Blake relied on the fact that other judges in this District and other federal districts have "recognized the bluntness" of pre-*Booker* life sentences and, as a result, "have reduced life sentences for defendants whose offenses included participation in drug-related killing or in drug conspiracies that involved murder reasonably foreseeable to them." *Id.* at 11.

41. Judge Bredar has similarly reduced the life sentences for Kevin Jones and Daniel Hill, who were convicted by a jury of joining a drug conspiracy involving violence,

including a murder committed by a co-defendant that was deemed reasonably foreseeable to them as part of the conspiracy. *United States v. Jones*, No. JKB-96-0399, ECF No. 634 (D. Md. Apr. 30, 2020); *United States v. Hill*, No. JKB-96-0399, ECF No. 635 (D. Md. Apr. 30, 2020); *see also United States v. Jones*, No. JKB-96-0399, ECF No. 623 (D. Md. Feb. 24, 2020); *United States v. Hill*, No. JKB-96-0399, ECF No. 621 (D. Md. Feb. 24, 2020).

42. Mr. Hill was not present at the time of the murder committed by his co-defendant, but occupied a leadership role in the conspiracy involving 47 kilograms of heroin and 53 kilograms of crack. Mr. Hill also attempted to influence the testimony of two witnesses to the murder. Mr. Jones's role in the conspiracy was to serve as an "enforcer," which meant that he carried or had access to a weapon and, on occasion, inflicted beatings to discipline members of the conspiracy or customers who took "testers" but did not purchase drugs from their organization.

Mr. Jones was not only present at the time of the murder, but prosecutors alleged that Mr. Jones was the one who handed the gun to his co-defendant who then shot and killed the individual. Judge Bredar, weighing the serious nature of the offense conduct against their post-offense rehabilitation, reduced Mr. Jones's and Mr. Hill's sentences pursuant to Section 404 of the First Step Act to 330 months. Mr. Jones was released last May, and Mr. Hill was released last July.

43. Again, in *United States v. Brown et al.*, Judge Hollander reduced the life sentences for Bobby Brown, Thomas Carter, and Julius Brown to 40 years, 35 years, and time served, respectively. *See United States v. Julius Brown*, No. ELH-00-0100, ECF No. 465

(D. Md. Dec. 17, 2020); *United States v. Carter*, No. ELH-00-0100, ECF No. 424 (D. Md. Apr. 17, 2020); *United States v. Bobby Brown*, No. ELH-00-0100, ECF No. 414 (D. Md. Mar. 16, 2020). All three co-defendants were convicted of drug- and gun-related charges following a jury trial, and Julius Brown was also convicted of threatening a witness. Additionally, Julius Brown had been charged with attempting to kill a witness (he was 50 years old at the time of the alleged incident), but the jury acquitted him of that count.

44.     In addition, Bobby Brown and Mr. Carter were charged with committing a murder (they were 25 and 26 years old, respectively, at the time of the incident), but were acquitted of that count. At sentencing, Judge Davis found by a preponderance of the evidence (and by the higher clear and convincing standard) that Bobby Brown and Mr. Carter had committed the murder and that the murder was also reasonably foreseeable to Julius Brown as part of the drug conspiracy. Even before the application of the murder cross-reference under § 2A1.1, all three defendants faced offense levels above 43, with each defendant receiving a four-level leadership enhancement for his role in the charged conspiracy and both Julius Brown and Bobby Brown receiving obstruction of justice enhancements. Judge Davis imposed sentences of life plus 30 years for each of the three men. Judge Hollander was of the belief that the defendants' sentences should be reduced to maintain uniformity in sentencing.

45.     Moreover, in addition to falling in line with recent sentence reductions, a time-served sentence would be in keeping with sentences imposed more serious cases being heard

in the first instance today. For example, in *United States v. Brandon Bazemore*, No. CCB-16-0597, Judge Blake sentenced the defendant, who admitted to participating in a murder as part of his membership in a violent drug-trafficking organization called "Trained to Go" based in West Baltimore, to 25 years of incarceration, which was later reduced to slightly less than 24 years. *See* <u>Plea Agreement</u>, ECF No. 368 ("Bazemore and other [Trained to Go] members exited the van and fired dozens of rounds at [the victim].").

46. Co-defendants in that case, who were convicted following a jury trial of knowingly joining the organization responsible for eight murders, received sentences ranging from 25 to 35 years, although they faced a maximum of life. In *United States v. Timothy Floyd*, No. CCB-16-0597, Judge Blake sentenced the defendant, who was convicted following a jury trial of joining a racketeering conspiracy that involved a 2016 murder, to 30 years of incarceration. *See* Judgment, ECF No. 691.

47. In *United States v. Carlos Alas Brizuela*, No. JKB-16-0259, Judge Bredar sentenced the defendant to 32 years in prison for his participation in a violent racketeering conspiracy, including three murders, two attempted murders, and a kidnapping. *See* Plea Agreement, ECF No. 691. Codefendants in that case who each admitted to participating in a brutal first-degree murder in which the bodies of three victims, identified as Victims 13, 14, and 18, were dismembered received sentences ranging from 25 to 30 years.

48. In *United States v. Manuel Martinez-Aguilar*, No. JKB-17- 0589, Judge Bredar sentenced the defendant to 24 years incarceration in a case where the defendant admitted that

he was a member of the violent MS-13 gang and that he conspired and attempted to kill two individuals. *See* Plea Agreement, ECF No. 109 (stating that the defendant, along with other members of MS-13, devised a plan to murder two victims and that he "unsuccessfully attempted to run over [one of the victims] with [a] car").

49. In *United States v. Flores-Ventura*, et al., No. JKB-18-070, Judge Bredar sentenced three defendants to 30 years incarceration after they admitted to luring the victim out of the state and then stabbing him until he died. *See* Plea Agreements, ECF Nos. 92, 113, & 126. In *United States v. Wesley Brown*, No. JKB-16-0363, Judge Bredar sentenced the defendant, who admitted to killing the victim to prevent him from testifying in a pending state case, to 31 ½ years. *See* Plea Agreement, ECF No. 387. Codefendant David Hunter, who admitted to distributing a mandatory-minimum quantity of drugs and to shooting and killing an individual, received a sentence of 321 months. *See* Plea Agreement, ECF No. 288.

50. In another well-publicized case before Judge Russell, the Court sentenced the defendant, who admitted to firing multiple gunshots at individuals in a vehicle, one of which missed and tragically struck and killed a three-year-old child, to 25 years of incarceration. *See United States v. Plummer*, No. GLR-17-0223, ECF No. 460. Judge Russell also imposed sentences of 25 years or slightly less in *United States v. Alewine et al.*, No. GLR-16-0453, even though defendants in that case admitted to multiple shootings. Keenan Lawson, for example, was sentenced to 23 years despite admitting to killing an innocent bystander and to shooting two other individuals in attempts to murder them. *See* <u>Plea Agreement</u>, ECF No. 604.

51.    In *United States v. Molina-Valldarez et al.*, No. RWT-09-0471, Judge Titus sentenced defendants Mario Molina-Valladarez and Rafael Omar Villegas Martinez to 24.4 and 23 years, respectively, for personally killing a victim in a gang-related murder or aiding and abetting the same. *See* <u>Plea Agreements</u>, ECF Nos. 240 & 249. Judge Titus imposed a sentence of 22 years for co-defendant Yasud Flores, even though he participated in the kidnapping and murder of a 15- year-old thought to be a member of a rival gang. And, in *United States v. Luis Guzman-Ventura*, No. RWT-13-0496, Judge Titus sentenced the defendant, a member of MS-13 who opened fire on a group of people believed to be members of a rival gang, one of whom died from gunshot wounds, to 30 years imprisonment. *See* <u>Plea Agreement</u>, ECF No. 470.

52.    Again, in *United States v. Kevin Alexis Hernandez-Guevara*, No. PX-17-0382, Judge Xinis sentenced the defendant, an MS-13 member who helped lure a victim to a secluded location where other gang members shot, assaulted, and fatally stabbed him and, in another incident, shot and stabbed two victims, causing them to sustain serious and life-threatening permanent injuries, to 24.3 years. *See* <u>Plea Agreement</u>, ECF No. 192.

53.    In *United States v. Moreno-Martinez*, et al., No. PX-17-0154, three MS-13 gang members pleaded guilty to a conspiracy to kidnap, but their actual conduct involved premeditated murder of a victim. The leader, Neris Moreno-Martinez, received a sentence of 30 years, and his coconspirators, Jose Melendez-Rivera and Reynaldo Granados-Vasquez, each received sentences of 20 years.

54.    Finally, in *United States v. Ahmad Linton*, Crim. No. JKB-98-258 (D. Md. Sept. 27), ECF No. 471, Judge Bredar reduced the sentence of a defendant who had received a

mandatory life sentence for committing murder in aid of racketeering. Judge Bredar resentenced Mr. Linton to 30 years, expressly noting that judges in this district regularly sentence defendants in drug-related murders to terms of 20 to 30 years. *Id.* at 9.

55. The sentencing results in *Babb*, *Antoine*, *Stockton*, *Linton* and others, and their gross disparity with Mr. Smith's sentence, make the arguments for relief in this case are the more compelling. The legal landscape for sentencing has shifted dramatically since 2012, and Mr. Smith has already served a longer sentence than others convicted of similar crimes, thus providing another extraordinary and compelling reason for compassionate release.

C. Sentence Length

56. Under the *First Step Act*, courts have considered sentence length as a basis for granting relief from judgment. *See, e.g., United States v. Saccoccia,* 10 F.4th 1, 8 (1st 2021) (**sentence length** may be considered as "an extraordinary and compelling reason for compassionate release"). In this case, Mr. Smith was sentenced to a draconian **25-year sentence** without the possibility of parole. Such sentences, indeed, are generally reserved for the most heinous offenses, including rape and murder; but that is not the case here. *Cf. United States v. Maumau,* 993 F.3d 821, 828 (10th Cir. 2021) (observing that the district court correctly considered the *length* of defendant's sentence in granting *First Step Act* relief); *McCoy v. United States,* 2020 U.S. Dist. LEXIS 93730, at *5 (E.D. Va. May 26, 2020) (same).

57.   We are not unmindful that Mr. Smith's conviction was a result of many kilograms of cocaine. And while that may be a factor for the court to consider in deciding whether relief should be granted, this factor should be weighed against other factors that we suggest warrant relief. *See United States v. Martin*, 916 F.3d 389, 397 (4th Cir. 2019) (district court erred where it was content to memorialize the defendant's "past transgressions" without giving "any weight" to the multitude of redemptive measures taken by the defendant); *see also United States v. Collington*, 995 F.3d 347, 360 (4th Cir. 2021) (noting that under the *First Step Act*, "substantive reasonableness requires a sentence to be justified under the totality of the circumstances").

58.   As the Court in *Martin* explained, a district court must provide an individualized explanation as to why a "lengthy sentence for a **nonviolent drug offense** must remain only partially reduced given the significant amount of mitigation evidence that [the defendant] has proffered post sentencing." *United States v. Martin*, 916 F.3d 389, 398 (4th Cir. 2019).

59.   Stated another way, a "mere[] [] recitation of [a defendant's] original criminal behavior" is "not the standard that the Supreme Court and the Fourth Circuit articulate for sentence-reduction motions." *Martin*, 916 F.3d at 397. *See also United States v. McDonald*, 986 F.3d 402, 411 (4th Cir. 2021) (*Legree* presumption rebutted where "[e]vidence of mitigating factors not available at [defendant's] initial sentencing" is shown).

### D.   Amount of Time Served

60.   Further, courts have considered the amount of time served as a basis for granting relief. *United States v. Kibble*, 992 F.3d 326, 331 (4th Cir. 2021) (recognizing that district courts are "'entitled to consider the **amount of time** [defendants] ha[ve] served as one factor in the 3553(a) analysis'"). Here, Mr. Smith has served a significant portion of his 25-year sentence, *i.e.*, over 10-years. This is a significant factor that favors Mr. Smith's request for appropriate relief. *See United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020); *United States v. Chaverra-Cardona*, No. 87 CR 340, 2021 WL 131437, at *3 (N.D. Ill. Jan. 14, 2021) (finding the "lengthy sentence" already served of 34 years provided an *extraordinary and compelling* reason warranting relief); *United States v. Kincaid*, 802 Fed Appx. 187, 188 (6th Cir. 2020); *see also United States v. Sweets*, No. CCB-04-564, 2020 U.S. Dist. LEXIS 101647, at *6 (D. Md. June 10, 2020) (concluding that a "district court is not precluded from considering, under the §3553(a) factors, aspects of a defendant's sentence not amended by statutory changes"); *Concepcion v. United States*, 142 S. Ct. 2389, 2401 (2022) ("Nothing in the text and structure of the *First Step Act* expressly, or even implicitly, overcomes the established tradition of district courts' sentencing discretion").

61.   For Mr. Smith to languish in prison for any longer will not serve any enumerated goal of §3553(a). *See United States v. Salina-Cortez*, 660 f.3d 695, 698 (3d Cir. 2011) ("It is only by ensuring that the individual circumstances of the defendant are not obliterated by the offense that an individual's potential to successfully rejoin society

is maximized and the interests of the public safety advanced"); *see also* Valerie Wright, *Deterrence in Criminal Justice: Evaluating Certainty vs. Severity of Punishment*, The Sentencing Project, at 1 (Nov. 2010) ("Research to date generally indicates that increases in the certainty of punishment, as opposed to the *severity* of punishment, are more likely to produce deterrent benefits") (emphasis added).

### C. No Danger to Others

62. Mr. Smith does not present a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Who Mr. Smith was over 10-years ago does not represent the man that he is today. Mr. Smith has used his time extremely well and has worked to better himself so that he might be a valuable and productive member of society. *See Pepper v. United States*, 131 S. Ct. 1229, 1242-43 (2011) ("In assessing... deterrence, protection of the public and rehabilitation... there would seem to be no better evidence than a defendant's post-incarceration conduct"); *United States v. Trujillo*, 713 F.3d 1003, 1010 (9th Cir. 2013) (same).

Mr. Smith's remarkable rehabilitation is further evidenced and buttressed by BOP personnel, in which they conclude that the "Unit Team believes Mr. Smith will be a productive member of society upon his release." (*Exhibit* 2 p.1); *see also United States v. Eaton*, No. 98-cr-86-TCK, 2022 U.S. Dist. LEXIS, at *10-11 (N.D. Okla. July 13, 2022) ("[E]vidence of post-sentence rehabilitation is likely the most critical of core considerations for the Court in a §3582(c) proceeding"); *United States v. Millan*, No. 91-cr-685, 2020 U.S. Dist. LEXIS, at *9 (S.D.N.Y. Apr. 6, 2020) (granting a sentence

reduction under §3582(c) to a defendant who ran a drug-trafficking organization, given that "[the defendant], in the face of a life sentence, assumed a positive outlook and attitude towards life, sought to improve himself to the utmost extent possible and was motivated to do so notwithstanding his circumstances").

63. Today Mr. Smith stands before the Court a "humble[]" and changed man. He is deeply remorseful for his past conduct, and not a day goes by that he does not regret the harm that his poor decisions have caused to others. Mr. Smith cannot change the past. But he can mark a new path for the future. He has been appropriately branded a criminal, and he well deserves the stigma. But for his crimes, Mr. Smith has been aptly punished. He has languished in prison for over ten (10) calendar years.

64. More than a decade in prison is an extraordinarily harsh punishment; that is undeniable. But in this case, it has served its purpose – punishment, correction, rehabilitation, and deterrence. *See* §3553(a)

65. While it is true that Mr. Smith has a clouded criminal history, and tepid institutional adjustment, many others, with far greater criminal histories, have been granted compassionate release. *E.g., United States v. Agnant,* 2022 WL 1203651, at *2 (D. Md. Apr. 22, 2022) (defendant had four prior convictions, including a drug conviction, firearms possession, and involuntary manslaughter); *United States v. Moore,* 2022 WL 137865, at *1, 4, 13 (D. Md. Jan. 14, 2022) ("significant criminal history" including armed robbery and flee from police and conspiracy to distribute heroin while in prison); *United States v. Gamboa,* 2022 WL 275528, at *2 (S.D.W. Vir. Jan. 28, 2022) (a "serious criminal history – including a conviction for distributing heroine while

serving a sentence for cocaine distribution"); *United States v. Guess*, 2021 WL 6049455, at \*4 (E.D. Vir. Dec. 21, 2021) (sentence reduced where defendant had a "significant criminal record, which included convictions for burglary, assault and battery, possession of methamphetamine, possession of a firearm with methamphetamine, and spousal abuse," and "evidence show[ed] that while he was awaiting proceedings in the instant case, [he] repeatedly solicited multiple inmates to kill the Government's informant."); *United States v. Johnson*, 2021 WL 5494527, at \*2 (D. Md. Nov. 23, 2021) (sentence reduced where defendant "had an extensive criminal history that spanned 36 years and included 28 adult criminal convictions.").

65. Time has a way of working things out. And true to form, it has done so for Mr. Smith. *See Pepper*, 131 S. Ct. at 1242 ("Post-sentencing rehabilitation may also critically inform a sentencing judge's overarching duty under §3553(a) to 'impose a sentence sufficient, but not greater than necessary' to comply with the sentencing purposes set forth in §3553(a)(2)").

66. Filed along with this motion are letters from family and friends, attesting to Mr. Smith's good character. Ms. Laurica Thibodeaux, a long-time friend of Mr. Smith, says that Mr. Smith "truly cared about everyone that crossed his path." (*Exhibit* 3). Germaine Cunninham, another long-time friend, says that she has "always been able to count on" Mr. Smith for "moral support" and that he will "not pose any undue risk to society" should he be released (*Exhibit* 4). Mrs. Cunningham is the owner of an assisted living business, A Ray of Light, and she promises to support Mr. Smith with a "place to stay or a job in the community." *Id.*

67. In another letter, Ms. Dulani Christian, a personal friend, says that Mr. Smith "is remorseful for his prior actions" and that he has a "strong support system through his family." (*Exhibit* 5). Ms. Kwanza Winslow speaks glowingly of Mr. Smith, expressing her view that Mr. Smith is a "man who is intensely loyal, a man of his word," and a man who cares "deeply for the young people in his community." (*Exhibit* 6). Ms. Winslow laments that while she does not "condone Mr. Smith's former lifestyle," she believes that in a democracy, all persons "are deserving of a second chance after making a mistake." *Id.*

68. Also, to Mr. Smith's credit is that fact a very reputable company, Legendary Import Group, promises that if Mr. Smith is released, he has "guaranteed employment and support from" the company. (*Exhibit* 7). General Sales Manager, Marvin Noble, says that Mr. Smith is a "man of substance" who "helped out numerous people in Baltimore, MD, as well as indigent people in other states," and his offer of support is his "way of giving back to someone who has given so much to communities." *Id.*

69. Ms. Satoya Daughton, a schoolteacher, and another long-time friend, explains that Mr. Smith has "been a father figure" to her for more than 20-years, and that they often discuss ways that Mr. Smith "can further his education to be a productive citizen." (*Exhibit* 8). She explains that Mr. Smith is a "God fearing" man who "lives by faith and honor," that he is "not a monster," and "deserves another chance to prove that he can be a good citizen." *Id.*

70. Chrissy Smith, a supporter of Mr. Smith, says that Garnett "ready to show and prove" that he is "reformed" and "no longer has a desire to go back to the way he was."

(*Exhibit* 9). Dr. Topeka K. Sam, Founder of The Ladies of Hope Ministries, laments that "there is no doubt in [her] mind that Mr. Smith has worked incredibly hard over more than the past decade to make amends for the harms he caused to his community, his family and himself." (*Exhibit* 10).

71.　Conetta Hilliard, CEO of Space City Transport, promises to provide Mr. Smith with employment should he be released, and says that she is "wholeheartedly" confident that Mr. Smith "will be a true asset to society." (*Exhibit* 11). Ms. La La Anthony, another close friend, asks that the Court grant Mr. Smith relief, and explains that she recently "reconnected with Garnett and saw tremendous growth" in him. (*Exhibit* 12). As she most vividly recalls, Garnett "had an infectious personality" and "was always willing to go the extra mile to help those in need." *Id.*

72.　With her most sincere plea to the Court, Mr. Smith's mother, Ms. Jeannie Smith, asks the Court to "please consider releasing" her son. (*Exhibit* 13). She says that Garnett "can and will be a model citizen," and that "he is a very positive good person that has so much to contribute to family, friends, and anyone" who needs help. *Id.*

73.　In his letter to the Court, Mr. Smith begins by saying that he is "very remorseful for the crimes [he] committed," and that he "would like to apologize to [his] community, [] family, and [] country for all the pain and despair" that his actions caused. (*Exhibit* 14). Mr. Smith recounts that like many "young black men born in Baltimore City in the 60's," he was raised in a single parent home and began "hanging with the wrong crowd trying to find a family and at 15 years old, began using alcohol heavily and various narcotics to numb [his] pain." *Id.* Mr. Smith expresses his love for his mother

and his "five beautiful children." Today, Mr. Smith explains, he is a "healed and transformed man of God" who is focused on rebuilding his life and being a "positive asset to society." *Id.*

74. All of these letters paint a picture of a caring and diligent man who deserves another chance to be productive and free amongst his friends, family and children. *See also* (*Exhibit* 15, Letter of Support from AWJ Logistics) and (*Exhibits* 16 -18, Letters of Support from Incarcerated Individuals). The Court should thus give these letters great weight in rendering a final decision. *See United States v. Mack*, 2021 U.S. Dist. LEXIS 53947, at \*6 (S.D. Ohio Mar. 23, 2021) (giving significant weight to "letters from family members and friends" which "demonstrate that defendant's family and community support is unusual and extraordinary").

75. If Mr. Smith is released, he will be residing with his mother, Ms. Jeannie Smith, at 1466 Grayson Highway, apt.111, Lawrenceville, GA 30045. Mr. Smith's mother is 70-years old and suffers from significant health issues, including Diabetes, Hypertension, Chronic Arthritis, and severe back pain. Mr. Smith intends to provide care to his mother who, a this time, has difficulty in taking care of herself. Ms. Smith and no other children, nor next of kin to provide her with assistance. Thus, Mr. Smith is the only available caregiver for his ailing mother. *See, e.g., United States v. Johnson*, 13-00082 (KSH), 2021 WL 3260847, at \*4 (D.N.J. Jul. 29, 2021); *United States v. Tucker*, 3:14-CR-0367-B-84, 2021 WL 977100, at \*1 (N.D. Tex. Mar. 15, 2021).

76. **The Court Should Exercise its Discretion to Reduce Mr. Smith's term of Supervised Release.**

Mr. Smith is also eligible for a reduction of his term of supervised release. The Court originally imposed a 5-year term of supervised release. Doc. 93. Mr. Smith respectfully asks that his term of supervised release be reduced to 2-years.

77. **CONCLUSION AND REQUEST FOR RELIEF**

For the foregoing reasons, Mr. Smith respectfully asks the Court to reduce his sentence pursuant to Section 603(b) of the *First Step Act* and enter an amended judgment re-sentencing him to either time-served, or 170-months. *See United States v. Leon*, No. 93-199, ECF No. 586 (D. Conn. May 20, 2019) (reducing the defendant's lifetime sentence to time served, even though the currently-applicable guidelines remained life); *United States v. Biggs*, No. 05-316, 2019 WL 2120226 (N.D. Ill. May 15, 2019) (imposing a variant sentence of 180 months, even though the defendant's guidelines range remained unchanged at 360 months to life); *United States v. Copeland*, No. 6-018, 2019 WL 2090699 at *3 (W.D. Va. May 13, 2019) (imposing the same proportional variance below the career offender guidelines range as imposed at the original sentencing); *United States v. Brown*, No. 2:08-cr-98, ECF No. 171 (W.D. Pa. Apr. 23, 2019) (holding that the court is not precluded from reducing a commuted sentence under the *First Step Act* and imposing a sentence below the currently-applicable guidelines).

Respectfully submitted,

_____
Garnett G. Smith
#54853-037
FCI Three Rivers
P.O. Box 4200
Three Rivers, TX 78071


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th day of February, 2023, a copy of the foregoing Motion for Relief from Judgment, was mailed, prepaid postage affixed to: Office of the U.S. Attorney, 36 S. Charles Street, Baltimore, MD 21201.

_____
GARNETT SMITH